# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1925 | **DATE** | 6/16/2003 |
| **CASE TITLE** | Kevin C. Carter vs. Tennant Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Tennant's Motion for Summary Judgment is GRANTED as to Counts I and II.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 1 8 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 37 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | | JUN 1 8 2003 date mailed notice | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK OF COURT
03 JUN 18 AM 8: 13
FILED
Document received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN C. CARTER,

                    Plaintiff,

          v.

TENNANT COMPANY,

                    Defendant.

Case No. 02 C 1925

Hon. Harry D. Leinenweber

DOCKETED

JUN 1 8 2003

## MEMORANDUM OPINION AND ORDER

In this diversity action, which was removed to federal court, plaintiff Kevin C. Carter ("Carter" or "Plaintiff"), an Illinois resident, is maintaining a two-count complaint against Tennant Company ("Tennant" or "the Company"), a foreign corporation incorporated in Minnesota, alleging retaliatory discharge and violation of the Illinois Privacy in the Workplace Act (the "Privacy Act"). Before the Court is Tennant's Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the motion.

### I.  BACKGROUND

Except as noted, the following facts are undisputed for summary judgment purposes. From August 1998 until April 1999, Kevin Carter served as a part-time custodian for Gurnee School District 56 ("Gurnee"). On November 30, 1998, while working for Gurnee, Carter injured his back and filed a workers' compensation claim (the "Gurnee Claim") with the School District's compensation insurer, Gallagher

Bassett. Gallagher Bassett approved Carter's claim, and in December 1998, began paying for frequent and regular chiropractic treatments. In April 1999, Carter resigned from Gurnee. Until September 15, 1999, however, he continued to receive coverage for his chiropractic visits from Gurnee's workers' compensation benefits.

Shortly after leaving Gurnee, Carter applied for a position with Tennant Company. As part of Tennant's hiring process, Carter was required to fill out a Consent to Drug Testing and Information Sheet, as well as a Health History Questionnaire (the "Questionnaire"). He completed both documents on April 19, 1999. The Questionnaire began by asking Carter to "place an (X) next to any of the following conditions that you now have or ever have had." In response, Carter placed an "X" next to "allergies/hay fever" and "back/neck trouble/pain on lifting/bending." In the explanatory section for these conditions, Carter wrote "Allergies/hay fever - controlled with OTC medication if needed" and "Back/neck trouble - slight misalignment of vertebrae; corrected by chiropractic adjustment." Opposite the description of his back/neck trouble, in a column labeled "Year," Carter wrote 1998.

The second page of the Questionnaire asked Carter to place an "X" in either a yes or a no box next to a list of questions. Carter answered "yes" to the first question, which asked whether Carter had suffered "occupational injuries, accidents or illnesses." He also answered yes to the next question, which asked "Did you lose time from work for a work-related injury or illness?" Carter, however,

- 2 -

listed "hair caught on motor shaft, resulting in swelling of scalp and face" as his injury and specified that he had lost one week from work as a result of this accident. He made no mention of the back injury he had suffered while employed by Gurnee. The third question asked "Did you see a medical doctor for any work-related injury/illness?" Carter again answered "yes" and wrote that he "saw doctor following above incident." The only incident listed earlier on that page was the motor shaft accident. Carter signed the Questionnaire, affirming that all of his answers were "complete and true" and acknowledging that "[a]ny misrepresentation or omission may be justification for refusal of employment, or if employed, termination of employment."

On April 26, 1999, after successfully completing a physical examination and drug test, Carter began working for Tennant as a Field/Area Service Representative. He continued to receive chiropractic treatments for his prior back injury and, for several months, his treatments were covered by Gurnee workers' compensation benefits. On September 15, 1999, however, Gallagher Bassett suspended these benefits after Carter failed to appear for a medical examination.

Two weeks later, on September 28, 1999, Carter informed his Tennant supervisor that he had injured his back while working at a customer site. He immediately sought treatment from his regular chiropractor, Dr. Jeffrey Watkin. Dr. Watkin recommended two days of light duty, which Tennant accommodated.

On September 29, 1999, Dr. Watkin submitted a Workers' Compensation Attending Physician's Supplemental Report to the Company. In this form, Dr. Watkin described Carter's injury as "[a]cute low back pain reaggravated at work" and noted the date of injury as November 30, 1998, the date on which Carter initially injured his back while employed by Gurnee. In a subsequent report dated November 9, 1999, Dr. Watkin again noted the date of injury as November 30, 1998 and described Carter's back problems as "chronic" and frequently exacerbated. On November 9, 1999, Tennant's workers' compensation insurance carrier, Sentry Insurance, informed the Company that it was denying Carter's 1999 workers' compensation benefits claim (the "Tennant Claim") because Carter had filed a previous claim with Gurnee for his back injury and was receiving physical therapy for his problem.

Carter continued to work for Tennant after his alleged September 28, 1999 injury and while Sentry processed his workers' compensation claim. Throughout this period, Carter received positive evaluations and comments from his supervisors. In his evaluations, dated October 28, 1999 and November 15, 1999, Carter received ratings of "meets" and "exceeds" expectations. He received the first of these evaluations after he had filed the Tennant Claim, and received the second after Sentry denied his claim. Moreover, in a separate conversation that took place on November 15, 1999, Carter's supervisor, Kevin Cull ("Cull"), told Carter that he was pleased with his work and that Carter should seek a promotion at Tennant. That

- 4 -

same day Carter also received a retroactive merit increase in salary, effective November 1, 1999.

Carter's career at Tennant, however, was short-lived. According to Tennant, sometime after November 10, 1999, Tennant's Disability Council, a committee that oversees workplace injuries and related claims, met to discuss Carter's alleged work-related injury, the insurance company's investigation and denial of Carter's workers' compensation claim, and his failure to disclose his preexisting injury and ongoing treatment on the Questionnaire. The Disability Council, which was chaired by Ryan Rebman, and whose members included the Human Resources Manager, a Senior Attorney, the Industrial Health Nurse, the Corporate Safety Engineer, and possibly Mike Anderson and Cull, Carter's supervisors, made the decision to terminate Carter on the grounds that he had submitted a falsified Questionnaire. On November 30, 1999, Cull and Anderson told Carter that he was being terminated effective December 1, 1999.

On January 29, 2001, Carter filed a complaint with the Illinois Department of Labor alleging violation of the Privacy Act. 820 ILL. COMP. STAT. ANN. 55/1-20 et seq. (West 2003). On October 1, 2001, the Department of Labor issued a Notice, declaring that it had "concluded its administration and enforcement of the Act" and that it would "take no further action in this matter." Carter then filed this action in the Circuit Court of Cook County on February 7, 2002. It was removed to this Court on March 15, 2002. In his Amended Complaint, Carter alleges that he had answered the Questionnaire

truthfully and that Tennant terminated him in retaliation for exercising his rights under the Illinois Workers' Compensation Act ("IWCA"), 820 ILL. COMP. STAT. ANN. 305/1 *et seq.* (West 2003). Carter further alleges that the Questionnaire violated the Privacy Act.

## II. **DISCUSSION**

### A. **Summary Judgment**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v.*

- 6 -

*Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## B. Count I – Retaliatory Discharge

The IWCA makes it unlawful for an employer to discharge an employee for exercising his or her rights under the Act. § 305/4(h). In Count I, Carter alleges that Tennant discharged him in retaliation for filing a workers' compensation claim.

### 1. Claim Definition

Before analyzing the merits of the claim, the Court must first address the parties' dispute over which workers' compensation claim forms the basis for the retaliation count. In his Amended Complaint, Carter alleges that he was terminated "as a direct consequence of learning of his exercise of his rights as guaranteed under the Illinois Workers' Compensation Act before he became its employee, and because he gave Defendant notice that he had strained his back at work." (Pl.'s Am. Compl. ¶ 27.) He further alleges that he was "discharged and not rehired because he exercised his Workers' Compensation rights." (*Id.* ¶ 28.) Carter's Amended Complaint, therefore, appears to allege that Tennant terminated him in retaliation for filing both the Gurnee Claim and the Tennant Claim.

Tennant argues in its Motion for Summary Judgment, however, that Carter's retaliation claim is "based solely on the workers'

compensation claim" that Carter filed while a Tennant employee. (Def.'s Mot. for Summ. J. at 2.) As support for this argument, Tennant points to Carter's deposition testimony, in which Carter agreed that his retaliation claim is limited to the Tennant Claim. Carter fails to rebut this argument in his Response Brief and instead concedes that his "retaliation claim is based on the fact that after being injured on the job for Tennant, Carter filed an Employee Injury Report, which the Tennant Risk Management Specialist then used to produce and file a state specific workers' compensation claim with Sentry Insurance." (Pl.'s Resp. at 4.) In his Supplemental Authority in Opposition to Defendant's Motion for Summary Judgment, which Carter filed almost a month after the summary judgment motion was fully briefed, however, he suddenly argues that his retaliation claim *did* extend back to encompass the Gurnee Claim.

Carter's efforts at reviving this claim are, to appeal to a cliché, simply too little, too late. Having conceded in his deposition and, more importantly, in his summary judgment brief that his allegations only relate to the Tennant Claim, Carter cannot use his Supplemental Authority brief to advance a conflicting theory. *See, e.g., United States v. Cirrincione*, 600 F. Supp. 1436, 1442 n.1 (N.D. Ill. 1985) (refusing to entertain new arguments raised in a Supplemental Memorandum because defendants were only given leave to file the brief to cite to supplemental authority). Even if this Court were to include the Gurnee Claim in Carter's retaliation count, those allegations would not survive summary judgment. Carter

provides no evidence that Tennant discharged him in retaliation for filing the Gurnee Claim. He points to sections of Tennant's briefs as admissions of wrongdoing, but those sections merely indicate that Tennant terminated Carter because he had failed to disclose his prior injury, not because he had filed the workers' compensation claim associated with that injury. Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. For the above reasons, Carter's claim of retaliatory discharge is limited to the Tennant Claim.

## 2. Merits

In order to establish retaliatory discharge in the workers' compensation context, Carter must show (1) that he was employed by Tennant before his injury occurred; (2) that he exercised a right granted by the IWCA; and (3) that his discharge was causally related to his filing a workers' compensation claim. *DePluzer v. Vill. of Winnetka*, 638 N.E.2d 1157, 1162 (Ill. App. Ct. 1994). Tennant did not dispute the second prong in its initial brief although, as it points out in its Reply Brief, Carter denies filing a workers' compensation claim and argues that Tennant filed it on his behalf without his consent or knowledge. Regardless, a workers' compensation claim was filed in this case and, therefore, the Court will only address whether Carter was a Tennant employee at the time

of his injury, and whether his discharge was causally connected to the filing of the workers' compensation claim.

Carter must first establish that his injury occurred while he was a Tennant employee. There are two predominant disputes between the parties: 1) whether Carter sustained a new injury while working for Tennant, or whether he merely aggravated an injury he incurred while employed by Gurnee, and 2) whether Carter may bring an action for retaliatory discharge if his injury was a reaggravation of a prior injury and not a new and distinct problem.

Tennant contends that Carter did not sustain a distinct injury while working for the Company. As evidence, it points to the reports issued by Dr. Watkin after the September 28, 1999 incident, which repeatedly list the date of Carter's injury as November 30, 1998 and which describe Carter's 1999 injury as a reaggravation of existing back pain. Carter, in turn, argues that the settlement agreement entered into between the parties for workers' compensation benefits records the date of his injury as September 28, 1999 and describes that injury not only as "aggravated previous injury," but also as "strain."

Carter argues that even if his injury were a reaggravation of his prior back problems, it would still constitute an injury for the purposes of this prong. This Court need not determine whether Carter suffered a new and distinct injury on September 28, 1999 because it agrees that Carter may satisfy the first prong of the retaliatory

discharge test by demonstrating that he was employed by Tennant when he reaggravated his existing injury. A review of Illinois cases provides little insight into whether aggravation of an existing injury is a sufficient injury for the purposes of a retaliatory discharge claim. The tort action for retaliatory discharge, however, was created to ensure that employers would compensate their employees promptly for their injuries. *See Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 884 (Ill. 1994). Illinois courts have repeatedly held that an employee is entitled to workers' compensation even if that employee sustains a work-related injury that aggravates a prior condition. *See, e.g., Goldblatt Bros., Inc. v. Indus. Comm'n*, 421 N.E.2d 909, 911 (Ill. 1981); *City of Springfield, Ill. Police Dep't v. Indus. Comm'n*, 766 N.E.2d 261, 264-65 (Ill. App. Ct. 2002). It follows that if aggravated injuries are compensable under the IWCA, such injuries should be subject to the Act's protection and, therefore, may be the subject of a retaliatory discharge action.

### *b. Causality*

The third element of the retaliatory discharge claim requires Carter to establish causality between the filing of the workers' compensation claim and his discharge. Before addressing this element, this Court must indulge in a brief discussion of how Illinois retaliatory discharge cases that are brought in a federal court should be analyzed. This issue is the source of some confusion in the parties' briefs, and of some debate in the Seventh Circuit.

- 11 -

The Seventh Circuit has stated that federal courts may use the *McDonnell Douglas* burden-shifting method to analyze such cases. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994). Under this method, a plaintiff must first establish a *prima facie* case of retaliatory discharge by demonstrating that he was 1) in a protected class; 2) performing his job satisfactorily; 3) nevertheless the subject of a materially adverse employment action; and 4) that others outside of his protected class were treated more favorably. *Id.* at 768. If the plaintiff successfully establishes the *prima facie* case, the defendant must provide a lawful, nondiscriminatory reason for discharging him. *Id.* The burden then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for unlawful discrimination. *Id.*

Alternatively, a federal court may elect to analyze a retaliatory discharge claim under the Illinois tort approach. *Fratto v. Am. Airlines, Inc.*, No. 94 C 7765, 1996 WL 288520, at *7 n.5 (N.D. Ill. May 30, 1996). This approach simply requires the plaintiff to demonstrate the requisite third element of a retaliatory discharge claim, *viz.*, that his discharge was causally related to the filing of the workers' compensation claim. *Marin v. Am. Meat Packing Co.*, 562 N.E.2d 282, 285 (Ill. App. Ct. 1990). The plaintiff cannot establish causality if the employer has a valid and nonpretextual reason for the termination. *Id.*

Illinois courts have declined to use the burden-shifting analysis in retaliatory discharge cases because application of the burden shifting approach alters the elements a plaintiff must establish under traditional Illinois tort law. *See*, *e.g.*, *Clemons v. Mech. Devices, Co.*, 704 N.E.2d 403, 408 (Ill. 1998) (rejecting the *McDonnell Douglas* method because it would "expand the tort of retaliatory discharge by reducing plaintiff's burden of proving the elements of the tort."). In a concurring opinion in *Bourbon v. Kmart Corp.*, 223 F.3d 469, 474 (7th Cir. 2000)(Posner, J., concurring), Judge Posner elaborated on the effect *McDonnell Douglas* has on such cases:

> Applied to retaliation, the logic of the McDonnell Douglas standard would compel summary judgment for the plaintiff who showed that after lodging a complaint about discrimination, he (but not any otherwise similarly situated employee who did not complain) was fired or otherwise subjected to an adverse employment action even though he was performing his job in a satisfactory manner, unless, again, the defendant presented a noninvidious reason for the action. Without the boost given by McDonnell Douglas, the plaintiff in such a case would have to establish, as part of his prima facie case and thus before the defendant had any burden of explanation, a causal connection between the lodging of the complaint and his being fired.

*Id.* Indeed, because of the possibility that the *McDonnell Douglas* method conflicts with substantive state law, Judge Posner has questioned the very propriety of using *McDonnell Douglas* in a diversity case due to *Erie* doctrine considerations. *Id.* at 473-77.

While Tennant and Carter ostensibly embrace the *McDonnell Douglas* method in their briefs, their arguments essentially follow

- 13 -

the traditional Illinois tort approach. Both parties ignore the *prima facie* test entirely, the fourth prong of which Carter fails to satisfy. Due to the confusion surrounding the application of *McDonnell Douglas* to Illinois retaliatory discharge claims, however, neither party should be faulted for failing to apply *McDonnell Douglas* correctly. Given the parties' use of the Illinois tort approach in their arguments, the Court will analyze Carter's claim under that traditional tort approach instead of under the *McDonnell Douglas* approach. It should be noted, however, that because Tennant successfully puts forth a lawful, nonpretextual reason for discharging Carter, Tennant would succeed in obtaining summary judgment on this count under either method.

In order to establish the third element of retaliatory discharge, Carter must "affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)(citing *Marin*, 562 N.E.2d at 286). While Tennant is under no obligation to do so, it may provide an alternative explanation for terminating Carter. *Clemons*, 704 N.E.2d at 406. If that explanation is valid and nonpretextual, Carter cannot prove causation. *Id.* The ultimate issue in the element of causation is what the employer's motive was when it discharged the employee. *Id.*

Because an employer can discharge an at-will employee such as Carter for any reason or for no reason at all, it is Carter's burden to prove that he was discharged in violation of the IWCA. *Roger*, 21

F.3d at 149. The two short arguments Carter makes to establish causality are insufficient to meet this burden. He first asserts that the proximity in time of his termination from Tennant to his exercise of his rights under the IWCA is evidence of retaliatory discharge. Illinois courts have held that a party may establish a *prima facie* case of retaliatory discharge by showing "a short time span between the exercise of the employee's rights under the Workers' Compensation Act and the employer's action discharging the employee." *Hugo v. Tomaszewski*, 508 N.E.2d 1139, 1141 (Ill. App. Ct. 1987). Carter, however, provides no insight into the relevant time span in this case; indeed, earlier in his brief he denies even filing a claim. All that this Court can deduce from the facts is that the Tennant Claim was filed sometime after September 28, 1999 and that the Disability Council decided to terminate Carter sometime after November 10, 1999. The "causality requirement calls for more than a sequential connection." *Roger*, 21 F.3d at 149 (citing *Marin*, 562 N.E.2d at 286). On its own, the relevant time span in this case is not compelling circumstantial evidence of wrongdoing. *Cf. Czubak v. ICEE USA Corp.*, 1997 U.S. Dist. LEXIS 11966, at *10 (N.D. Ill. Aug. 12, 1997)(finding that plaintiff established a *prima facie* case when he was terminated seven days after filing a workers' compensation claim). It carries even less weight when considered alongside Tennant's positive treatment of Carter during that exact time period, namely, the good evaluations of his work, the

encouragement to seek promotion, and the retroactive merit salary increase.

Carter also alleges that Ryan Rebman's deposition testimony proves that Tennant terminated him for filing a workers' compensation claim. The relevant portion of Rebman's deposition is as follows:

> Q. Do you know the basis – basis for Mr. Carter's termination?
> A. Somewhat.
>
> Q. And what's your understanding?
> A. I don't – I believe it was – my understanding is his termination is because of filing a work comp claim. I think it was part of it. From what I understand there's several issues pending. I don't know what specifically they all are.
>
> Q. Did you discuss the question as to whether or not the way Mr. Carter completed this form constituted falsification of his application for employment?
> A. I believe we discussed that, yes.
>
> Q. And what was, in your judgment, false about – on this employment health history?
> A. In my judgment, he didn't talk about his – him being – currently being – or he was seeking – he was being treated for work comp injury while employed with Tennant Company.

(Rebman Dep. at 52-53.)

In arguing that Rebman's testimony is direct evidence of wrongdoing, Carter focuses on Rebman's statement that he understood Carter's termination "is because of filing a work comp claim." (*Id.* at 52.) Direct evidence, however, is evidence that proves a fact "without reliance on inference or presumption." *Lalvani v. Ill. Human Rights Comm'n*, 755 N.E.2d 51, 65 (Ill. App. Ct. 2001)(citing *Hunt-Golliday v. Metro. Water Reclamation Dist.* 104 F.3d 1004, 1010 (7th Cir.

1997)). Even standing alone, Rebman's comment is susceptible to several interpretations. It could mean that Tennant fired Carter in retaliation for filing a claim, but it could also mean that Tennant fired Carter because he did not report a prior injury for which he had filed a workers' compensation claim. Indeed, when placed in the context of his broader testimony, the later interpretation seems more likely. Given its ambiguous nature, Rebman's comment does not rise to the level of direct evidence.

Moreover, the comment simply reflects the "understanding" of Rebman, a man who Carter concedes was not a decision maker in his termination. (Pl.'s Resp. to Def.'s Local Rule 56.1 Stmt. ¶¶ 86, 88.) Carter further concedes that Rebman did not even know who made the termination decision. (*Id.*) "Stray remarks, including isolated statements, statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself, are insufficient to establish discrimination." *Sola v. Ill. Human Rights Comm'n*, 736 N.E.2d 1150, 1161 (Ill. App. Ct. 2000)(internal quotation marks omitted).

Even if Carter had somehow established a causal link between his filing of a workers' compensation claim and his termination, his retaliatory discharge claim would still have failed because Tennant has articulated a legitimate, nonpretextual reason for his discharge. Both the Tennant Employee Handbook and the Questionnaire itself make it clear that providing false or misleading information to Tennant about injuries may be grounds for termination. Tennant explains that

- 17 -

it terminated Carter because he violated this policy by falsifying his Questionnaire. According to Tennant, Carter indicated on the form that his "Back/neck trouble - slight misalignment of vertebrae" had been corrected by a chiropractor in 1998 when, in fact, Carter was still receiving weekly chiropractic treatments. Tennant also argues that, in response to a question about whether Carter had seen a medical doctor for any work-related illness or injury, Carter indicated only that he had seen a doctor after catching his hair in a motor shaft. Tennant contends that Carter should have also disclosed that he had received, and was continuing to receive, medical treatments for his preexisting and ongoing back injury.

Carter argues that he completed the Questionnaire truthfully and that Tennant's asserted reason for terminating him is a pretext. He points out that he indicated on the form that he currently had or had ever had "back/neck trouble/pain on lifting/bending." He further explains that in his description of this back/neck trouble he noted 1998 as the year that the problems had occurred and gave no indication that his back problems had been solved at that time. The issue in retaliatory discharge cases, however, is "not whether the employer treated the employee fairly, but whether the discharge was in retaliation for filing a workers' compensation claim." *DePluzer*, 638 N.E.2d at 1162-63. The court does "not sit as a super-personnel department that reexamines an entity's business decisions. . . ." *Roger*, 21 F.3d at 151 (internal quotation marks and citations omitted). It is unimportant whether Tennant's decision to terminate

Carter because of his responses on the Questionnaire was misguided or ill-considered or even wrong. As long as Tennant honestly believed its proffered reason, it is not a pretext.

Apart from Rebman's testimony, which, as discussed, provides no insight into the motives of the actual decision makers, Carter fails to adduce any additional evidence that Tennant did not believe its stated reason for his termination. Moreover, Tennant's positive attitude towards Carter after his workers' compensation claim was filed and after it was denied belie the notion that the Company terminated him because of his claim. Plaintiff concedes that Tennant accommodated his medical restrictions, and continued to give him positive evaluations, encouragement and financial rewards throughout the period. This Court finds no evidence that the reason Tennant provides for Carter's termination was a pretext and, as a result, grants Tennant's motion for summary judgment as to Count I.

### C. Count II - Violation of the Privacy Act

The Privacy Act prohibits any employer from inquiring "in a written application or in any other manner, of any prospective employee or of the prospective employee's previous employers, whether that prospective employee has ever filed a claim for benefits under the Workers' Compensation Act . . . or received benefits under [that Act]." 820 ILL. COMP. STAT. ANN. 55/10 (West 2003). Carter contends that Tennant violated this prohibition when it terminated him for failing to disclose that he had filed a claim for benefits or that he had been receiving benefits under the IWCA.

- 19 -

Tennant argues that Carter's claim must fail for the following two reasons: 1) it is barred by the statute of limitations set forth in section 55/15 of the Privacy Act; and 2) Carter lacks standing to bring a private cause of action under the Privacy Act.

## 1. *Statute of Limitations*

The Privacy Act requires an employee to file a complaint with the Department of Labor "within 180 days after termination or the complained of incident." ILL. ADMIN. CODE tit. 56, § 360.120(a) (2002). Tennant argues that Carter's complaint is time-barred because he filed it on January 29, 2001, over 600 days after completing the Questionnaire, and over 400 days after he was terminated. Carter claims that Tennant has waived the statute of limitations defense because the Company failed to assert it in front of the Department of Labor in its response to Carter's complaint. The case Carter cites as guidance on this issue is not on point, and a review of Illinois cases suggests that the courts have not reached this issue.

Illinois courts, however, have repeatedly held that a party's failure to set out a statute of limitations defense in its answer to a complaint "will not automatically result in waiver of that affirmative defense." *Medrano v. Prod. Eng'g Co.*, 774 N.E.2d 371, 378 (Ill. App. Ct. 2002). Indeed, courts have frequently permitted parties to argue the limitations period in their summary judgment motions even where the parties failed to raise it as a defense in their answers. *Id.* at 379 (collecting cases). In light of these cases, it makes little sense for this Court to bar Tennant from

arguing the statute of limitations in its summary judgment motion simply because the Company failed to include that defense in a response filed in a Department of Labor proceeding. That proceeding, after all, has an entirely different set of rules and standards. The procedure set forth in the Privacy Act for filing a claim and a response makes no mention of how a party should raise affirmative defenses such as the statute of limitations defense. *See* § 360.120. Indeed, under the Privacy Act procedure, an employer is not even obligated to file a response to the employee's complaint; the Department of Labor still reviews the claim to determine whether it merits an investigative conference. § 360.120(g). Moreover, Tennant *did* raise the statute of limitations defense in the answer it filed in *this* proceeding. Carter, as the party claiming waiver, "has the burden of proving a clear, unequivocal and decisive act of its opponent manifesting an intention to waive its rights." *Ciers v. O.L. Schmidt Barge Lines, Inc.,* 675 N.E.2d 210, 213 (Ill. App. Ct. 1996). He has failed to meet this burden, and the Court finds that his Privacy Act count is time-barred.

### *2. Standing*

Even if Carter's action were not time-barred, he lacks standing to bring a private cause of action under the Privacy Act. Section 15(b) of the Privacy Act states that:

> If an employee or applicant for employment alleges that he or she has been denied his or her rights under this Act, he or she may file a complaint with the Department of Labor. The Department shall investigate the complaint and shall have authority to request the issuance of a search warrant

> or subpoena to inspect the files of the employer or
> prospective employer, if necessary. The Department shall
> attempt to resolve the complaint by conference,
> conciliation, or persuasion. If the complaint is not so
> resolved and the Department finds the employer or
> prospective employer has violated the Act, the Department
> may commence an action in the circuit court to enforce the
> provisions of this Act including an action to compel
> compliance.

820 ILL. COMP. STAT. ANN. 55/15(b)(West 2003). Section 15(c) permits

an employee to bring an action to enforce the provisions of the Act

only if two conditions have been met: (1) "efforts to resolve the

employee's or applicant for employment's complaint concerning the

violation by conference, conciliation or persuasion under

subsection (b) have failed" *and* (2) "the Department has not commenced

an action in circuit court to redress the violation." 820 ILL. COMP.

STAT. ANN. 55/15(c)(West 2003); *Hampton v. Vill. of Washburn*, 739

N.E.2d 1019, 1022 (Ill. App. Ct. 2000). Tennant argues that the

Department of Labor's efforts to resolve Carter's complaint pursuant

to section 15(b) were successful and that, as a result, Carter may

not bring a private cause of action for violation of the Privacy Act.


In his Response to Tennant's Motion for Summary Judgment, Carter

contends that the only prerequisite for filing a private action is

that the Labor Board release the plaintiff to pursue other legal

remedies. He provides no statutory support for this assertion and

the Court finds no support for it in the plain language of the

Privacy Act. As a result, Carter must follow the requirements set

forth in section 15(c). Carter adduces no evidence that the

Department of Labor failed to resolve his Complaint.  Indeed, while he denies that the matter was resolved in his Response to Defendant's Local Rule 56.1 Statement of Uncontested Facts, he concedes in his brief that "[u]pon Defendant agreeing to revise its form and bring its parameters within the legal limits of the law, the Labor Department issued an order . . . stating that its administration and enforcement of the Act in the matter had concluded." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at 12.)  Although Tennant argues that it never admitted  any wrongdoing and was not found to have violated the Privacy Act, it appears that an agreement was reached between the parties and that the Department of Labor found that the issue had been resolved.  As a result, Carter has no standing to bring a private cause of action pursuant to section 55/15(c).

### CONCLUSION

For the reasons set forth above, Tennant's Motion for Summary Judgment is **granted** as to Counts I and II.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: June 16, 2003

- 23 -